[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12872
_____

D.C. Docket No. 1:01-cr-00458-TWT-GGB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OTTO D. TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 9, 2020)

Before GRANT and MARCUS, Circuit Judges, and AXON,* District Judge

---

* Honorable Annemarie Carney Axon, District Judge for the Northern District of Alabama, sitting by designation.

GRANT, Circuit Judge:

Otto Taylor was part of a drug-trafficking ring selling crack and powder cocaine in the late 1990's and early 2000's. Taylor got a life sentence, later reduced to 30 years, for his part in the drug ring.

At the time, the federal penalties for selling crack cocaine were extraordinarily harsh—a drug dealer who sold 5 grams of crack, for example, faced the same mandatory minimum sentence as one who sold 500 grams of powder cocaine. Congress has made some changes to the federal drug laws in the years since. Of particular relevance to Taylor, the First Step Act of 2018 permits district courts to reduce some of the severe sentences imposed more than a decade ago for crimes involving crack cocaine. The district court denied Taylor's motion for a sentence reduction under the First Step Act, however, because his offense involved powder cocaine—and lots of it—as well as crack cocaine. To resolve his appeal, we must decide whether a federal drug crime involving both crack cocaine and another controlled substance can be a "covered offense" as that term is defined in the Act. The answer is yes, so we vacate the district court's order denying Taylor's First Step Act motion and remand for further proceedings consistent with this opinion.

I.

As with all cases involving § 404 of the First Step Act, the events giving rise to this appeal began a long time ago. In 2001, a grand jury indicted Otto Taylor for one count of conspiracy to possess with intent to distribute controlled substances. The grand jury charged that the conspiracy involved at least 5 kilograms of a

2

mixture containing a detectable amount of cocaine hydrochloride (powder cocaine) as well as at least 50 grams of a mixture containing a detectable amount of cocaine base (crack cocaine), all in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(ii), and 841(b)(1)(A)(iii).

Roughly two years later, Taylor pleaded guilty to the conspiracy charge. After the district court recited that the conspiracy involved at least 5 kilograms of powder cocaine and at least 50 grams of crack, both the government's and Taylor's lawyers agreed, without saying anything more, that the statutory range of imprisonment for the pleaded offense was ten years to life. And the lawyers were correct. At the time, § 841(b) provided that an offense involving either 50 grams or more of crack or 5 kilograms or more of powder cocaine carried a mandatory minimum of ten years' imprisonment and a maximum of life in prison. 21 U.S.C. § 841(b)(1)(A)(ii)–(iii) (2000). The district court accepted Taylor's plea and adjudged him guilty as charged.

At the sentencing hearing, the district court found that Taylor's conspiracy involved more than 1.5 kilograms of crack cocaine or 150 kilograms of powder cocaine. Based on that finding and Taylor's criminal history, the court calculated that Taylor's Sentencing Guidelines sentence was life in prison. The district court expressed reservations about whether a life sentence was appropriate under the circumstances, but it reluctantly applied the Guidelines as mandatory. Taylor was therefore sentenced to life in prison.

But that sentence was short-lived. On direct appeal, we found that Taylor had shown plain error under *United States v. Booker*, 543 U.S. 220 (2005), because

3

the district court applied sentence enhancements under the then-mandatory Sentencing Guidelines despite its evident disagreement with the resulting life sentence. *United States v. Taylor*, 135 Fed. App'x 387, 390 (11th Cir. 2005). We vacated Taylor's judgment and remanded for resentencing, and on remand, the district court resentenced Taylor to 360 months' imprisonment.

That was 2005. Five years later, Congress enacted the Fair Sentencing Act to reduce the sentencing disparity between drug-trafficking crimes involving crack cocaine and those involving powder cocaine. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). While the drug-quantity provisions for offenses involving powder cocaine remained the same, the Fair Sentencing Act increased the quantity of crack cocaine required to trigger a five-year mandatory minimum sentence from 5 grams to 28 grams and increased the quantity of crack required to trigger a ten-year mandatory minimum from 50 grams to 280 grams. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (codified as amended at 21 U.S.C. § 841(b)(1)(A)(iii) & (B)(iii)). By way of example, a defendant sentenced after the Act took effect whose drug-trafficking offense involved 50 grams of crack cocaine faced a penalty of 5 to 40 years' imprisonment rather than the sentence of 10 years to life triggered by the same quantity of crack cocaine before the Act. *Compare* 21 U.S.C. § 841(b)(1)(B)(iii) (2012), *with* 21 U.S.C. § 841(b)(1)(A)(iii) (2006). What the Fair Sentencing Act did not do was make those modifications retroactive.

Enter the First Step Act. Section 404 of that Act, passed in 2018, gives district courts the authority to apply the sentencing reforms of the Fair Sentencing

Act retroactively to prisoners who were sentenced for certain crack-cocaine offenses before the Fair Sentencing Act took effect. Specifically, the First Step Act allows—but does not require—courts to reduce an eligible prisoner's sentence as if the drug-quantity changes in the Fair Sentencing Act were in effect at the time the prisoner committed his offense. *See* First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (codified at 21 U.S.C. § 841 note).

So it was back to court for Taylor. In April 2019, he filed a motion for a plenary resentencing hearing under the First Step Act. The district court denied the motion, finding that Taylor's offense was not a "covered offense" under the Act because it involved, in addition to crack cocaine, 5 kilograms or more of powder cocaine, "which remains a sufficient quantity to trigger the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)." Taylor now appeals.

## II.

We review whether the district court had the authority to reduce Taylor's sentence under the First Step Act de novo. *United States v. Jones*, 962 F.3d 1290, 1296 (11th Cir. 2020).

## III.

Determining whether a prisoner is eligible for relief under the First Step Act is a question of statutory interpretation. We begin, as always, with the text. Section 404(b) authorizes district courts to reduce a prisoner's sentence if the sentence was imposed for a "covered offense." The Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." First Step Act

5

§ 404(a). A "covered offense" also must have been committed before the Fair Sentencing Act became effective on August 3, 2010. *Id.*

We recently made some headway in interpreting these statutory provisions in *United States v. Jones*, 962 F.3d 1290 (11th Cir. 2020). In *Jones*, we considered the appeals of four prisoners serving time for federal drug-trafficking crimes, each of whom had unsuccessfully moved for sentence reductions under § 404 of the First Step Act. We began by examining the statutory definition of a "covered offense" to decide whether the movants were eligible for relief. We explained that the term "covered offense" refers to an offense in the general sense—that is, generic conduct meeting each of the elements of a crime as it is defined by statute. *Jones*, 962 F.3d at 1301 ("Offenses are made up of elements."). The "elements" of a federal drug-trafficking crime may include one or more of the drug quantities listed in the statute that sets out the penalties for such crimes.[1] *See* 21 U.S.C. § 841(b)(1)(A)–(B). By increasing the quantity of crack cocaine required to trigger the five-year and ten-year mandatory minimum sentences, § 2 of the Fair Sentencing Act "modified the statutory penalties for crack-cocaine offenses that have as an element the quantity of crack cocaine provided in subsections 841(b)(1)(A)(iii) and (B)(iii)." *Jones*, 962 F.3d at 1298. We concluded that all of

---

[1] It is true that § 841(a) describes all the conduct necessary to commit a federal drug-trafficking crime without reference to the quantity of controlled substance involved in the offense, and § 846 similarly describes the core elements of a drug conspiracy offense. But where the weight of the controlled substance involved triggers the higher penalties in § 841(b)(1)(A) or (B), the triggering drug quantity effectively becomes an element of the offense. *See United States v. Curbelo*, 726 F.3d 1260, 1269 (11th Cir. 2013); *see also Apprendi v. New Jersey*, 530 U.S. 466, 501 (2000) (Thomas, J., concurring) (If "the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact," then "the core crime and the aggravating fact together constitute an aggravated crime," and the "aggravating fact is an element of the aggravated crime.").

the movants in *Jones* were sentenced for covered offenses under the First Step Act because they were all sentenced for drug-trafficking offenses that included one of the specified drug-quantity elements—that is, an offense for which § 2 of the Fair Sentencing Act modified the statutory penalties. *Id.* at 1302–03.

We made clear in *Jones* that a defendant sentenced for a pre-2010 drug-trafficking conspiracy involving only crack cocaine has a "covered offense" if the crack-cocaine element of his offense triggered the statutory penalties in § 841(b)(1)(A) or (B). *Id.* at 1301–02.[2] And it is equally clear that a drug-trafficking offense involving only powder cocaine would not be a covered offense. *See id.* at 1298, 1300. But what of a multidrug conspiracy offense like Taylor's? Taylor was sentenced for conspiring to possess with intent to distribute at least 5 kilograms of powder cocaine *and* at least 50 grams of crack cocaine. That was the offense charged in his indictment, admitted by his guilty plea, and recorded in his judgment. At sentencing, the district court determined Taylor's statutory penalties based on the quantities of both crack and powder cocaine involved in his offense. Taylor's offense unquestionably included a crack-cocaine element that triggered different penalties after the Fair Sentencing Act. *See* 21 U.S.C. § 841(b)(1)(A)(iii). But it also included a powder-cocaine element that did not. *See id.* § 841(b)(1)(A)(ii).

---

[2] Although the eponymous movant in *Jones* was charged with conspiring to traffick in both crack cocaine and powder cocaine, the district court—acting before the Supreme Court recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that such findings were the province of the jury—determined Jones's statutory penalties under § 841(b)(1)(A) based on its factual findings regarding crack cocaine only. *See Jones*, 962 F.3d at 1302.

7

That brings us back to the question before us: whether the First Step Act's definition of a "covered offense" covers a multidrug conspiracy offense that includes *both* a crack-cocaine element *and* another drug-quantity element. We hold that it does. To explain why, we review the statutes setting out the penalties for these offenses.

Here, the relevant federal criminal statute is 21 U.S.C. § 846, which prohibits conspiring or attempting to traffick in controlled substances. The statutory penalties for these drug conspiracy crimes are found in § 841(b). That section sets out several tiers of escalating punishments ranging from a fine to life in prison, depending on the nature and quantity of the controlled substances involved. *See* 21 U.S.C. § 841(b)(1)–(3). The highest penalties, including five- and ten-year mandatory minimum sentences, are reserved for crimes involving highly addictive drugs such as heroin, cocaine, and marijuana. *See id.* § 841(b)(1)(A)–(B).

A drug-trafficking conspiracy or substantive drug-trafficking crime involving multiple controlled substances may include multiple drug-quantity elements, which in turn may trigger different categories of punishment, or—as here—may trigger the same penalties twice over. That is not to say that a defendant convicted of a multidrug conspiracy is subject to multiple sentences; participation in a single drug-trafficking conspiracy constitutes a single offense, for which the defendant can receive only one sentence. *See Braverman v. United States*, 317 U.S. 49, 54 (1942). But each drug-quantity element triggers

8

corresponding statutory penalties, regardless of whether the offense includes one drug-quantity element or several.

Returning to the statutory text, the First Step Act defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." First Step Act § 404(a). The government argues that Taylor's offense does not meet this definition because the powder-cocaine element of his offense would still trigger the same statutory sentencing range of ten years to life after the Fair Sentencing Act. This argument overlooks the fact that the "statutory penalties for" a drug-trafficking offense include *all* the penalties triggered by every drug-quantity element of the offense, not just the highest tier of penalties triggered by any one drug-quantity element.

We recognize that the distinction is subtle. But it follows from the text, which authorizes a sentence reduction for any movant who was sentenced for a covered *offense*. Again, an "offense" in this context is a set of statutory elements defining a crime. By conditioning eligibility on the movant's offense, rather than on his actual conduct or the applicable sentencing range, the First Step Act casts a wide net at the eligibility stage.

In *Jones*, this meant that a movant who conspired to distribute 75 kilograms of crack cocaine—a quantity more than sufficient to trigger the highest penalties under § 841(b)(1)(A) both before and after the Fair Sentencing Act—was eligible for relief as an initial matter because his offense was a violation of the federal drug conspiracy statute with a drug-quantity element of 50 grams or more of crack

9

cocaine.[3] *Jones*, 962 F.3d at 1293, 1302.  The statutory penalties for an offense with that element were modified by the Fair Sentencing Act, so the movant had a covered offense even though the same offense conduct, if charged today, would also satisfy the new drug-quantity element (280 grams of crack cocaine) and subject him to the same statutory sentencing range.  *Id.* at 1302.

Along the same lines, a movant who engaged in a conspiracy to distribute, say, 100 kilograms of powder cocaine and 10 grams of crack cocaine would be subject to the highest tier of penalties in the drug-trafficking statute based solely on the quantity of powder cocaine involved in the conspiracy.  But the statutory penalties for his offense also include the penalties triggered by the crack-cocaine element of the offense, regardless of whether those are the penalties that actually apply at sentencing.  Before the Fair Sentencing Act, the crack-cocaine element (5 or more grams of crack cocaine) of this hypothetical offense triggered the intermediate category of penalties; after the Fair Sentencing Act, that same crack-cocaine element triggers the lowest tier of penalties for cocaine-related offenses. *Compare* 21 U.S.C. § 841(b)(1)(B)(iii) (2006), *with* 21 U.S.C. § 841(b)(1)(B)–(C) (2012).  So the "statutory penalties for" an offense involving one of the crack-cocaine drug-quantity elements previously specified in the federal drug-trafficking statute "were modified by" § 2 of the Fair Sentencing Act, even if the movant

---

[3] The reason Jones ultimately did not get the relief he sought was that he did not preserve the right argument.  He contended not that his conviction should count as a covered offense as a general matter, but that the judge's pre-*Apprendi* 75-kilogram finding should be set aside so that he could be resentenced without a statutory minimum based on the charge to the jury, which was that any amount of crack at all was sufficient for a guilty verdict.  *See Jones*, 962 F.3d at 1304. His case was not remanded because he never argued that he would have a covered offense even if we accepted the judge's 75-kilogram drug quantity finding.  *See id.* at 1304, 1305.

ultimately would be subject to the same statutory sentencing range as a consequence of another drug-quantity element of the offense.

Taylor's offense was conspiring to possess with intent to distribute at least 5 kilograms of powder cocaine and at least 50 grams of crack cocaine. Before the Fair Sentencing Act, those drug quantities satisfied the drug-quantity elements in § 841(b)(1)(A)(ii) (powder cocaine) and (A)(iii) (crack cocaine), both of which triggered the highest tier of penalties, including a sentence of imprisonment for ten years to life. After the Fair Sentencing Act, the powder-cocaine element of the offense triggered the same ten-to-life penalty, but the crack-cocaine element triggered a different, lower category of penalties. Taylor's offense was "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2" of the Fair Sentencing Act, and he committed his offense before the Fair Sentencing Act became effective. That means his offense is a covered offense. First Step Act § 404(a). And the First Step Act gives a movant like Taylor who was sentenced for a covered offense the opportunity to make his case for a reduction in his sentence.

Of course, any sentence reduction would have to be made "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Id.* § 404(b). As we explained in *Jones*, this "as if" clause means that (1) a movant who was sentenced to the lowest statutory penalty available to him under the Fair Sentencing Act cannot receive any further reduction in his sentence under the First Step Act, and (2) any drug-quantity finding that could have been used to determine the movant's statutory penalties at the time of his

11

original sentencing is binding on the district court. *Jones*, 962 F.3d at 1303–04. In Taylor's case, the "as if" clause does not forbid a sentence reduction if the district court decides that one is warranted.

IV.

Our conclusion that Taylor is eligible for a sentence reduction under the First Step Act brings us to Taylor's argument about the kind of proceedings the Act requires. In the district court, Taylor argued that he was entitled to a full resentencing hearing, with the benefit of all the changes in the law since his original sentencing in 2001. At oral argument, he acknowledged that we have resolved this issue against him during the pendency of his appeal. For the sake of completeness, we reiterate that "the First Step Act does not authorize the district court to conduct a plenary or *de novo* resentencing." *United States v. Denson*, 963 F.3d 1080, 1089 (11th Cir. 2020). The authority to reduce Taylor's sentence "as if sections 2 and 3 of the Fair Sentencing Act" were in effect when Taylor committed his offense does not permit the court to reduce Taylor's "sentence on the covered offense based on changes in the law beyond those mandated by" those sections. *Id.* Indeed, the First Step Act does not require the district court to hold a hearing at all before deciding whether and to what extent to reduce Taylor's sentence under the Act. *Id.* at 1087.

And we emphasize that the fact that Taylor is *eligible* for a sentence reduction under the First Step Act does not mean that he is *entitled* to one. First Step Act § 404(c). "District courts have wide latitude to determine whether and how to exercise their discretion in this context." *Jones*, 962 F.3d at 1304. On

12

remand, it is fair game for the district court to consider any information relevant to its decision, including its previous findings regarding the quantities of crack and powder cocaine involved in the conspiracy, and the fact that the powder cocaine element of Taylor's offense still triggers the highest tier of statutory penalties. *See id.* at 1301–02, 1304.

*    *    *

Taylor's drug-trafficking conspiracy involved significant amounts of both crack and powder cocaine, each of which triggered the most severe penalties in the drug-trafficking statute at the time he was sentenced. By effectively reducing the penalties triggered by the crack-cocaine element of Taylor's offense, the Fair Sentencing Act modified the statutory penalties for his offense as a whole. His offense is therefore a "covered offense" as that term is defined in § 404 of the First Step Act, and the district court was authorized—but not required—to reduce Taylor's sentence as provided in the Act. Because the district court erred in determining that Taylor was not eligible for First Step Act relief, we vacate the court's order and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**